# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

### SHREVEPORT DIVISION

| | | |
|---|---|---|
| ELDRIDGE J. HARMON | * | CIVIL ACTION NO.  14-2874 |
| VERSUS | * | JUDGE S. MAURICE HICKS |
| DIAN MEAUX BROUSSARD, ET AL. | * | MAG. JUDGE KAREN L. HAYES |

### REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b) and Standing Order 3.531, the above-captioned matter has been referred to the undersigned magistrate judge for review, report and recommendation.  For reasons that follow, it is recommended that plaintiff's federal law claims be DISMISSED, with prejudice; that his state law claims be DISMISSED, without prejudice; that all pending motions be DENIED, as moot and/or futile; and that plaintiff be SANCTIONED.

### Background

On October 3, 2014, pro se plaintiff Eldridge J. Harmon commenced the instant proceeding in federal court via a pleading styled, "Notice of Transfer from State Court to Federal Court."  [doc. # 1].  Harmon explained that he was entitled to request the transfer of his case from state court to federal court "after the defendants answer plaintiff's complaint, summons, and subpoenas issued by the United State Marshall' [sic] Office on plaintiff's behalf." *Id*.  In his pleading, Harmon requested service by U.S. Marshal on defendants:  the Vermillion Parish Clerk of Records, Abbeville, Louisiana; the State of Louisiana Archives, Baton Rouge Louisiana; Precision Holding, Dallas, Texas; and Traco Oil & Gas Drilling Co., Dallas, Texas.  *Id*.  In the

caption of his pleading and on the civil cover sheet, Harmon indicated that jurisdiction was premised on federal question, and that his cause of action was premised on 43 U.S.C. 1068(a) & (b).

Harmon also attached to his pleading a "Consumer Complaint Form" addressed to James "Buddy" Caldwell, the Louisiana Attorney General, in which he stated that "[t]his case is a hundred and sixty-five and a half years old where Petitioner, Eldridge J. Harmon is suing Vermilion Parish Clerk of Court Records for Fraud, Schemes & Trickery and Concealment where Samuel N. Huntsberry who is my Great-Grandfather was given a land Grant by President Roosevelt in 1908 . . ." [doc. # 1-2].  He also attached several documents, including a certificate signed by President Theodore Roosevelt documenting a land transfer to Samuel Huntsberry, together with maps, and a homestead application from a Samuel N. Huntsberry of Ruby, Louisiana.  *Id*.

On October 7, 2014, Harmon filed several documents.  The first is a document entitled "Complaint 'Class Action Allegations,'" which the Clerk of Court docketed as an amended complaint.  [doc. # 3].  In this pleading, plaintiff invoked the court's jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  *Id*.  He explained that he did not need to identify his state law claims because his cause of action obviously existed under state law.  *Id*.  He also claimed that this court enjoys diversity jurisdiction because his mailing address was in Houston, Texas, and his present address was a homeless shelter in Washington, D.C.  *Id*.

Plaintiff further explained that his

great-great grandfather whose name was Samuel Huntsberry was donated a land grant by the United States Government in 1865 consisting of 32.96 acres and in an effort to rob him of said land, his name was changed without his knowledge to

2

> Edmond Hunsbury; and [his] great-grandfather whose name was Edmond
> Huntsberry was donated 80 acres and his name too was changed to Edmond
> Hunsbury; and [his] grandfather whose name was Edward Huntsberry was
> donated 160 acres of land and Samuel N. Huntsberry's name appears on the land
> grant signed by President Theodore Roosevelt in 1908.
>
> Presently, the land is occupied by strangers claiming to own said lands and
> recorded papers in the Vermilion Parish Clerk of Court Record through Ms. Dian
> Meaux Broussard, an agent for the State of Louisiana; and the records were also
> filed in the Department of Interior's United States Land Office in its contaminated
> forms.

*Id*.

Furthermore, two drilling companies, Precision Holding and Traco Drilling Company, acting

without permission, discovered oil and gas on the Huntsberry property.  *Id*.  As a result of

defendants' "intentional, malicious, and wanton discrimination and RICO activities," plaintiff

alleges that he and his family suffered "irreparable" harm.  *Id*.  Accordingly, he seeks $1,000,000

from each of the "five"[1] defendants until such time as the Supreme Court is able to determine the

amount that defendants profited by.  *Id*.  Plaintiff also asked for a temporary restraining order to

prevent defendants from profiting until he is compensated.  *Id*.  Furthermore, he requested an

"Order of Protection" so he would not suffer possible bodily harm.  *Id*.

On October 7, 2014, plaintiff also filed a motion for issuance of a writ of mandamus

pursuant to 28 U.S.C. § 1361 [doc. # 4], in which he asked the court to compel an unspecified

officer or employee of the United States to perform an unspecified duty owed to him.  In

addition, he filed a motion for issuance of temporary restraining order and a permanent

injunction and "assignment" system [doc. # 5].  Plaintiff stated that he was entitled to have his

matter heard by a

---

[1] Albeit, he only named four defendants in his original complaint.

> three panel [sic] of judges to bring the Berger case to an end; and also, the land
> controversy in the Vermilion Parish Record Division in the State of Louisiana
> where plaintiff seeks a TRO to prevent any future money profits permitted without
> compensating we, the Huntsberry heirs; and this court must issue a writ of
> mandamus to bury [sic] the Berger case pending in U.S. district court under Class
> Action No. 75-1743.

*Id*.

Plaintiff explained  that he "is a victim of discrimination due to fraud, schemes, trickery and concealment that has been ongoing since 1865 and continues today; thereby causing [him] irreparable harm where there exists no adequate relief in this clear, undisputed and free from doubt case."  *Id*.  Plaintiff asked the court to grant his petition so the court of appeals would have an opportunity to review the case, which then would make it ripe for Supreme Court review.  *Id*.

Also on October 7, 2014, Harmon filed an un-notarized "affidavit," in which he recounted his life history.  (Harmon Affidavit [doc. # 6]).  Harmon referenced the "Jessie Berger Class Action lawsuit," which he described as being 42 years old.  *Id*.  He further suggested that he did not receive all of the relief that he was entitled to in that matter.  *Id*.

On October 8, 2014, the undersigned granted plaintiff's petition to proceed *in forma pauperis* in this matter.  (Oct. 8, 2014, Order [doc. # 8]).  Also on October 8, 2014, the District Court denied plaintiff's motion for temporary restraining order, and deferred consideration of his motion for preliminary injunction until after defendant appeared in the matter.  (Oct. 8, 2014, Mem. Order [doc. # 10]).  The Court ordered plaintiff to serve the defendant with the complaint and associated filings.  *Id*.

Meanwhile, for his part, plaintiff filed several more documents on October 8, 2014,

including 1) a motion for production of documents and things [doc. # 11];[2] 2) a motion to

consolidate unspecified "cases found in state court to be transferred to this federal district court"

[doc. # 12]; 3) a "Request for Ruling" [doc. # 13] by which he complained that the Clerk of

Court had not issued summons, and that the court's delay had deprived him of his due process

rights;[3] and 4) a "Notice of Transfer from State Court to Federal Court" [doc. # 14].[4]

On October 9, 2014, however, the Clerk of Court notified plaintiff that his submissions

from October 8 were deficient because, *inter alia*, he failed to: include a memorandum, certify

that he complied with Local Rule 37.1, indicate whether opposing counsel consented to the ex

parte order(s), provide a supporting memorandum, attach the objected-to discovery, and/or attach

a certificate of service. (Notices of Deficient Documents [doc. #s 16-19]). The notices afforded

---

[2] The motion stated that,

[t]his request for production will reveal defendants [sic] true assets and assist plaintiff's motion for temporary Restraining Order and writ of mandamus that will bring 42 years of intentional discrimination in the Berger class action [sic]; and prevent those occupying plaintiff's property from profiting without compensating the plaintiff class. Consistent with production plaintiff requested from John L. Oberdorfer, [sic] plaintiff is also requiring the other defendants to bring to the table all of their personal liability insurance, malpractice insurance and deeds to property, their holdings, insurance carriers and their writers and all total assets.

[3] Harmon added that, pursuant to Federal Rules of Civil Procedure Rule 5.1, the court is required to certify to the attorney general that the constitutionality of a federal statute is in question so the attorney general may intervene in the matter. *See* Fed.R.Civ.P. 5.1.

In the concluding paragraph of his "request for ruling," plaintiff stated that he presented the following additional motions for filing, 1) motion for appointment of counsel; 2) request for petition for writ of certiorari, 3) motion to intervene by attorney general; 4) motion for issuance of temporary restraining order to both the union and those earning money without payment to plaintiffs; and 5) motion to transfer case to the United States District Court.

[4] By this submission, plaintiff requested that the state court transfer his case to the federal court. *Id*.

plaintiff ten days to correct these deficiencies.  *Id*.[5]

Also on October 8, 2014, Harmon submitted another un-notarized "affidavit," in which he stated that the first time that he became aware of the Huntsberry property was in 1982 after hearing that his ancestors owned property outside of Abbeville, Louisiana.  [doc. # 15].  Harmon proceeded to tour the property and discovered a sign that read, "RESTRICTED KEEP OUT," along with a drilling rig that was in operation.  *Id*.  Harmon asked his uncle and cousins about the drilling, but they advised him to leave the land alone.  *Id*.[6]  After a few months, Harmon received a check for $2.90 in royalties.  *Id*.  Harmon again approached his uncle, who again warned him to leave the land alone.  *Id*.  Thereafter, Harmon returned to Houston.  *Id*.  He declared that unspecified persons were acting in concert to deceive him and his family by committing illegal acts.  *Id*.

On October 15, 2014, Harmon filed three documents:  1) a document entitled, "Amended Complaint" [doc. # 21], by which he sought to add additional defendants, plus recover ten percent of the profits of each defendant until the court is able to determine the true assets of each defendant as a result of the fraud committed in this action; 2) a document entitled, "Good Jurisdictionat [sic] Time of Removal" [doc. # 22];[7]  and 3) a motion to reduce the time that

---

[5]  On November 10, 2014, the court entered an order striking plaintiff's motion to reduce the time that defendants must answer the summons because plaintiff failed to cure the deficiencies delineated by the Clerk of Court.  (Nov. 10, 2014, Order [doc. # 33]).

[6]  Harmon's uncle told him, "[t]hem white folks told me that they didn't find oil on that land."  *Id*.

[7]  Harmon stated that because of "the nature of this case, the district court has no jurisdiction over this matter as [sic] concerns a land controversy and is alleged to be an exceptional case requiring immediately [sic] attention that is to be brought under the Administrative Procedure Act."  The document further explained that when a case lacks subject

defendants have to answer the summons to October 17, 2014, at 10:00 a.m. [doc. # 23].

The next day, the Clerk of Court again issued notices of deficiencies to plaintiff for his recent filings because he failed to file the documents on letter-size paper, did not attach a certificate of service, and/or did not seek leave of court.  *See* Oct. 16, 2014, Notices of Deficient Documents [doc. #s 24-26].

On October 17, 2014, plaintiff filed a notice of appeal [doc. # 27] to the United States Court of Appeals for the Fifth Circuit, presumably appealing the denial of his motion for temporary restraining order.

On October 25, 2014, plaintiff filed various documents, *in globo* [doc. # 30], including 1) a "Corrective Document" addressed to "the Clerk of the 119th [sic] District Court at Baton Rouge, La. Where [sic] plaintiff seeks to bring complaint to this district court due to the western district court's refusal to entertain plaintiff's case in Calcasieu Parish where the judge stated that I must seek relief in another court . . ."; 2) a motion to file amended pleading and amended motion and affidavit; 3) a proposed order authorizing plaintiff to file a third amended complaint; 4) a caption that included various additional defendants, including judges of the U.S. Court of Appeals for the District of Columbia; a congresswoman; the executive officer of the AFL-CIO; general counsel of the EEOC; the Secretary of the Department of Labor; the President and Chancellor of Baylor University; John Dienelt, an attorney; David Caldwell; and St. Mary Energy; 4) another document entitled "Good Jurisdiction at Time of Removal," at the end of which he requested a protective order because Local 201 has been known to kill iron workers

_____

matter jurisdiction at the time of removal, the defect can be cured by later amendment that establishes subject matter jurisdiction.  *Id*.  Plaintiff also attached a single paragraph "Amended Complaint," that clarified his prayer for relief.  *Id*.

who protest their illegal practices; 5) a motion for leave to file motion for intervention by United States Attorney General, Eric Holder; 6) a proposed order reducing the time for defendants to appear and answer the matter; and 7) an *in forma pauperis* affidavit with a caption referencing the 14th Judicial District for the Parish of Calcasieu.

On October 31, 2014, Harmon filed a motion to file amended pleading and amended motion and affidavit to place all defendants within the caption of the pleading.  [doc. # 31]. Along with this submission, Harmon filed a motion to amend his complaint for a third time. [doc. # 32].  In his proposed pleading, Harmon alleges that in the early 1980's the defendants, Diane Meaux Broussard, Precision Holding, Traco Oil & Gas Co., St. Mary's Energy, James "Buddy" Caldwell, agreed and combined to engage in a conspiracy to commit fraud, schemes, trickery, and concealment to profit from land belonging to Samuel N. Huntsberry and his heirs. Oil and gas were found on the land, and other individuals occupied the land and managed to claim the land.  Harmon contends that defendants engaged in a civil RICO conspiracy to inflict wrongs on him.

On November 12, 2014, Harmon lodged an objection in the instant record to the report and recommendation issued by Magistrate Judge Wilkinson in Harmon's earlier suit that he commenced on June 16, 2014, in the United States District Court for the Eastern District of Louisiana, *Harmon v. State of Louisiana, et al.*, Civ. Action No. 14-1403 (E.D. La.).  *See* discussion, *infra*.

On November 13, 2014, Harmon filed two more documents:  1) "Motion to Re-Enter the Whole Record that Plaintiff Submitted to this Court on October 31, 2014" [doc. # 35]; and 2) a motion for extension of time [doc. # 36].  With regard to the former, plaintiff petitioned the

8

Lafayette clerk to re-enter the whole record to be presented to the Baton Rouge Sheriff's Department for service on the defendants.  As to the motion for extension of time, plaintiff seems to want an extension of time for defendants to answer the suit in a matter pending before the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana.

### Analysis

a)    Frivolity Review

In any case where the court has authorized the plaintiff to proceed IFP, the court, at any time, shall dismiss a defendant against whom the action:  proves patently frivolous or malicious; fails to state a claim upon which relief may be granted; or seeks monetary relief that is barred by a defense of immunity.  *See* 28 U.S.C. 1915(e)(2)(B) & (C).  The court may screen the complaint and enter such dismissals, *sua sponte*.  *See e.g., Allard v. Quinlan Pest Control Co., Inc.*, 387 Fed. Appx. 433, 440 (5th Cir. July 13, 2010) (unpubl.); *Chapman v. Arlington Housing Authority*, 145 Fed. Appx. 496 (5th Cir. Oct. 12, 2005) (unpubl.).  In so doing, the court may consider affirmative defenses that are apparent from the record.  *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990).[8]

b)    Applicable Standard

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state a claim upon which relief can be granted."  Fed.R.Civ.P. 12(b)(6).  A pleading states a claim for relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is

---

[8] An early determination of the merits of an IFP complaint provides significant benefit to courts (because it permits effective and efficient use of scarce resources), to defendants (because it frees them from the burdens of patently meritless and harassing litigation), and to plaintiffs (because courts will have the time, energy and inclination to give meritorious claims the attention they need and deserve).  *See Ali, supra*.

entitled to relief . . .” Fed.R.Civ.P. 8(a)(2).   To withstand a motion to dismiss, “a complaint

must contain sufficient factual matter, accepted as true, to “state a claim to relief that is plausible

on its face.”  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007)).   A claim is facially plausible when it

contains sufficient factual content for the court “to draw the reasonable inference that the

defendant is liable for the misconduct alleged.”  *Id*.  *Plausibility* does not equate to *possibility* or

*probability*; it lies somewhere in between.  *See Iqbal, supra*.  Plausibility simply calls for enough

factual allegations to raise a reasonable expectation that discovery will reveal evidence to support

the elements of the claim.  *See Twombly*, 550 U.S. at 556, 127 S.Ct. at 1965.  Although the court

must accept as true all factual allegations set forth in the complaint, the same presumption does

not extend to legal conclusions.  *Iqbal, supra*.  A pleading comprised of  “labels and

conclusions” or “a formulaic recitation of the elements of a cause of action” does not satisfy Rule

8.  *Id*.  “[P]laintiffs must allege facts that support the elements of the cause of action in order to

make out a valid claim.”  *City of Clinton, Ark. v. Pilgrim’s Pride Corp.*, 632 F.3d 148, 155 (5th

Cir. 2010).

Assessing whether a complaint states a plausible claim for relief is a “context-specific

task that requires the reviewing court to draw on its judicial experience and common sense.”  *Id*.

(citation omitted).   A well-pleaded complaint may proceed even if it strikes the court that actual

proof of the asserted facts is improbable, and that recovery is unlikely.  *Twombly, supra*.

Nevertheless, a court is compelled to dismiss an otherwise well-pleaded claim if it is premised

upon an invalid legal theory.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827 (1989).

When considering a motion to dismiss, courts generally are limited to the complaint and

its proper attachments.  *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (citation omitted).  However, courts may rely upon "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Id*.  Additional documents also are considered "part of the pleadings," if plaintiff refers to them in his complaint, and they are central to his claim.  *See Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 499 (5th Cir. 2000) (citations omitted).

From what the court may decipher from plaintiff's disjointed pleadings, the instant suit seeks to vindicate two distinct causes of action.  First, it is apparent that he wishes to extend his ongoing crusade to resurrect the long-since closed case of *Berger v. Iron Workers Reinforced Rodmen, Local 201*, Civ. Action NO. 75-1743 (D.C. 1975), where he was a claimant.  Second, he appears to argue that he has been bilked out of mineral royalties as a result of defendants' failure to recognize his ownership interests in land acquired by his ancestors.  The court will address each cause of action separately.

c)  The *Berger* Case

Plaintiff was a claimant and participant in the class action, *Berger v. Iron Workers Reinforced Rodmen, Local 201*, Civ. Action NO. 75-1743 (D.C. 1975).  After years of litigation, the parties entered into a settlement agreement that was approved by the court after notice and a fairness hearing.  *See Berger, supra* (Feb. 6, 2001, Mem. Order [doc. # 897]).  Thereafter, pursuant to joint motion of the parties, the court entered a judgment of dismissal on March 31, 2000.  *Id*.  Under the terms of the settlement, Harmon received $48,597.  *Id*.  Nonetheless, Harmon sought to set the judgment aside on account of a "mass conspiracy to interfere with Civil Rights and many other violations of Constitutional Protected Rights."  *Id*.  The district court,

11

however, denied the motion. *Id*.

On, or about April 29, 2005, Harmon again filed various documents in the *Berger* suit including a motion for temporary restraining order and a motion for preliminary injunction. *See Berger, supra*. However, the court denied plaintiff's petition(s), noting that on January 23, 2001, the case had been dismissed with prejudice, and not appealed. *Berger, supra* (May 9, 2005, Mem. [doc. # 918]). In 2006 and 2014, Harmon sought to file other motions in the *Berger* case, but the court denied him permission to do so. *Berger, supra*.

In addition, Harmon has filed at least two prior suits in this district: *Harmon v. U.S. Department of Justice*, Civil Action No. 01-1152 (W.D. La), and *Harmon v. Gonzales*, Civ. Action No. 05-0323 (W.D. La.). In the latter case, as here, Magistrate Judge Hill noted that Harmon continues his quest to reopen and re-litigate the *Berger* case. *Gonzales, supra* (July 12, 2015, Report and Recommendation, adopted on August 3, 2005 [doc. #s 28 & 29]). Nonetheless, M.J. Hill concluded that this court did not have authority either under the Administrative Procedure Act, 5 U.S.C. § 701(a)(2), or pursuant to a writ of mandamus to grant plaintiff the relief he sought. *Id*. Instead, the court concluded that the actions taken in *Berger* were res judicata, and dismissed Harmon's suit, with prejudice, as time-barred. *Id*.[9]

Insofar as plaintiff, by this suit, intends to re-litigate matters that were raised in, or should have been raised in the *Berger* suit, this court is compelled to join the litany of courts that have declined to do so. Indeed, "[r]es judicata generally bars re-litigation of claims that actually were

---

[9] In a recent case filed by Harmon in the Southern District of Texas, Judge Hughes dismissed the matter out of hand because, *inter alia*, the judgment in the D.C. court precluded a subsequent suit on the same facts. *Harmon v. United States Attorney General*, Civ. Action No. 14-0687 (S.D. Tex. March 19, 2014 [doc. # 5]).

or should have been made earlier.  The doctrine ensures the finality of judgments, shelters

litigants from successive litigation, and conserves judicial resources."  *Turner v. Pleasant*, 663

F.3d 770, 775 (5th Cir. 2011), as revised (Dec. 16, 2011) (citations omitted).  In addition,

although under limited circumstances a party may bring an independent action to obtain relief

from a judgment, Harmon has not alleged any facts indicating that the issues he raises were not

open to litigation in the former action, or that he was denied a fair opportunity to make his claim

in that action.  *Addington v. Farmer's Elevator Mut. Ins. Co.*, 650 F.2d 663, 668 (5th Cir. 1981).

In fact, the *Berger* court explicitly entertained Harmon's related concerns and arguments, but

rejected them.

In sum, this court will not facilitate Harmon's crusade to impugn the integrity and finality

of a judgment issued by a sister court.

d)    Mineral Interest/Land

The court notes that until Friday, November 14, 2014, Harmon had a case pending before

the United States District Court for the Eastern District of Louisiana against the same defendants

that alleged many of the same mineral interest/land trespass claims at issue here.  *See Harmon v.*

*State of Louisiana, et al.*, Civ. Action No. 14-1403 (E.D. La.) (hereinafter, the "EDLA Case").

On October 10, 2014, Magistrate Judge Wilkinson reviewed Harmon's EDLA Case and distilled

his various allegations down to four claims:  (1) a federal law claim under 42 U.S.C. § 1983 for

violation of constitutional rights, apparently for deprivation of property rights without due

process; (2) a federal civil claim under the Racketeer Influenced and Corrupt Organizations

("RICO") statute, 18 U.S.C. § 1962(c), based upon defendants' allegedly fraudulent interstate

commerce activities; (3) a fraud claim under state law; and (4) a state law trespass claim.  *See*

13

*Harmon, supra* (Oct. 10, 2014, R&R [doc. # 18]).  Ultimately, M.J. Wilkinson recommended

that Harmon's claims under federal law be dismissed, with prejudice, and that his claims under

state law be dismissed without prejudice.  *Id*.  On November 14, 2014, the District Court adopted

the report and recommendation, and dismissed the case.  (Nov. 14, 2014, Order & Judgment

[doc. #s 19-20]) (EDLA Case).  If Harmon fails to timely appeal the judgment of dismissal in the

EDLA case, then after the applicable delays have run, principles of res judicata will preclude him

from re-litigating those issues here.  In the interim, the undersigned adopts and incorporates

herein, M.J. Wilkinson's reasoning, as further expounded upon below.[10]

I)      §§ 1983 & 1985 Claims

Under 1983, any person who, under color of state law, deprives another of  "any rights,

privileges or immunities secured by the Constitution and laws shall be liable to the party injured

in an action at law, suit in equity, or other proper proceeding for redress. . . ." *Harrington v.*

*Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983).  Section 1983 does not

create any substantive rights, however; it simply provides a remedy for the rights designated

therein.  *Id*.  "Thus, an underlying constitutional or statutory violation is a predicate to liability

under § 1983." *Id*.  (citation omitted).

"To state a claim under § 1983, a plaintiff must (1) allege a violation of rights secured by

the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was

committed by a person acting under color of state law." *Leffall v. Dallas Independent School*

*District*, 28 F.3d 521, 525 (5th Cir. 1994).  The first inquiry is whether plaintiff has alleged a

violation of a constitutional right at all.  *Id*.  *Piotrowski v. City of Houston*, 51 F.3d 512, 515 (5th

_____

[10]  A copy of the report and recommendation is attached hereto.

Cir. 1995).

In his myriad submissions, plaintiff seems to suggest that the defendant oil companies treated him differently because of his race.  To the extent that plaintiff is attempting to assert a claim for discrimination under the Fourteenth Amendment's Equal Protection Clause, he must establish that he was treated differently from similarly situated individuals, and that the unequal treatment stemmed from discriminatory animus.  *Taylor v. Johnson*, 257 F.3d 470, 473 (5th Cir. 2001) (citation omitted).  "Discriminatory purpose . . . implies that the decisionmaker singled out a particular group for disparate treatment and selected his course of action at least in part for the purpose of causing its adverse effect on an identifiable group."  *Id.*  (citation and internal quotation marks omitted).

Plaintiff's filings do not include any facts to show that *any* defendant treated him differently than similarly situated individuals outside of his protected class, or that *any* defendant acted out of discriminatory animus.  Even if he had done so, plaintiff's complaint is devoid of any allegation or suggestion that the oil company defendants were acting "under color of state law," as defined above.  Indeed, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *Richard v. Hoechst Celanese Chemical Group, Inc.*, 355 F.3d 345, 352 (5th Cir. 2003) (quoted source omitted).  Thus, the court necessarily finds that plaintiff's complaint  fails to state a cognizable § 1983 claim.[11]

─────────────────────

[11]  As to defendants, Vermilion Parish Clerk of Court and the State of Louisiana Archives, the undersigned joins M. J. Wilkinson in noting that

> [t]he Eleventh Amendment to the United States Constitution bars suits in federal
> court by citizens of a state against their own state or a state agency or department.
> Claims under federal statutes do not override the Eleventh Amendment bar unless

Plaintiff further alleges that defendants conspired or acted in concert against him.  To the extent that these conclusory allegations are meant to invoke 42 U.S.C. § 1985, the court observes that to state a claim under § 1985(3), plaintiff must allege

> (1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

*Hilliard v. Ferguson*, 30 F.3d 649, 652-653 (5th Cir. 1994).

Moreover, for purposes of asserting a conspiracy claim, plaintiff must assert the "operative facts upon which the claim is based."  *Lynch v. Cannatella*, 810 F.2d 1363, 1369-1370 (5th Cir. 1987).

---

there is a clear showing of congressional intent to abrogate the bar. Section 1983 does not override the Eleventh Amendment bar.

*Darlak v. Bobear*, 814 F.2d 1055, 1059 (5th Cir. 1987) (citation omitted).

Thus, the Eleventh Amendment bars suits for both money damages and injunctive relief against a state entity. *Id*.  It also precludes state law claims brought against the State and its departments (in federal court). *Richardson v. Southern University*, 118 F.3d 450, 453 (5th Cir. 1997).

Moreover, insofar as plaintiff sued the Vermilion Parish Clerk of Court in her official capacity this "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105 (1985) (citing, *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035, n. 55 (1978)).  As such, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity," and is barred.  Furthermore, here, plaintiff seeks solely monetary relief.  Also, in his objection to M.J. Wilkinson's report and recommendation, plaintiff clarified that he "never claimed that agencies from the State of Louisiana were charged with violation of 1983; as that applies to Federal Judges whom plaintiff claims conspired to interfere with Civil Rights and a host of other violations that plaintiff intend [sic] to *present to the court in Washington, D.C."*  (Pl. Objection [doc. # 34]) (emphasis added).

Insofar as plaintiff intended to sue Dian Meaux Broussard, the Vermilion Parish Clerk of Court in her individual capacity, the court observes that she is  entitled to qualified immunity under § 1983 so long as she acted pursuant to her lawful authority and was following in good faith the instructions or rules of the Court and was not in derogation of those instructions or rules.  *Rheuark v. Shaw*, 628 F.2d 297, 305 (5th Cir. 1980) (citations and internal quotation marks omitted).  Plaintiff has not alleged any *specific facts* to undermine Ms. Broussard's qualified immunity.

Conclusory allegations of conspiracy do not suffice.  *Arsenaux, supra*.  Harmon's filings,

however, fail to set forth a factual basis to support a conspiracy between the defendants.

Accordingly, plaintiff also fails to state a § 1985 claim against defendants.

    ii)    <u>RICO</u>

"Under the civil RICO statute, [a]ny person injured in his business or property by reason

of a violation of section 1962 can sue for treble damages and fees."  *Welborn v. Bank of New*

*York Mellon Corp.*, 557 F. App'x 383, 386 (5th Cir.), *cert. denied*, ____ U.S. ___, 135 S. Ct. 106

(2014) (citation and internal quotation marks omitted).  Thus, a civil RICO claim requires proof

of three elements:  "(1) a person who engages in (2) a pattern of racketeering activity, (3)

connected to the acquisition, establishment, conduct, or control of an enterprise."  *Abraham v.*

*Singh*, 480 F.3d 351, 355 (5th Cir. 2007) (citations omitted).  Furthermore, "[a] pattern of

racketeering activity consists of *two* or more predicate criminal acts that are (1) related and (2)

amount to or pose a threat of continued criminal activity."  *St. Germain v. Howard*, 556 F.3d

261, 263 (5th Cir. 2009) (emphasis added).

    Here, at minimum, plaintiff's allegations fail to establish that defendants' activities are

encompassed within any *two* of the predicate criminal offenses required to support a RICO claim.

*See Jones v. Liberty Bank & Trust Co.*, 461 F. App'x 407, 409 (5th Cir.) *cert. dismissed*, ___ U.S.

___, 133 S. Ct. 32 (2012).  As in Harmon's EDLA case, "the complaint makes garden variety

civil fraud allegations, but does not make allegations sufficient to state violations of any of the

particularized federal fraud, theft or property crimes, *see, e.g.*, 18 U.S.C. §§ 659, 1341, 1344,

1351, 1957, constituting 'racketeering activity' as defined in the RICO statute."  (Oct. 10, 2014,

17

R&R) (EDLA case).[12]  Accordingly, Harmon fails to state a civil RICO claim.

     iii)    <u>Quiet Title Act</u>

     In several of his submissions, and most recently in support of his motion for extension of

time [doc. # 36], plaintiff invoked 43 U.S.C. § 1068, which provides that

> [t]he Secretary of the Interior (a) shall, whenever it shall be shown to his
> satisfaction that a tract of public land has been held in good faith and in peaceful,
> adverse, possession by a claimant, his ancestors or grantors, under claim or color
> of title for more than twenty years, and that valuable improvements have been
> placed on such land or some part thereof has been reduced to cultivation, or (b)
> may, in his discretion, whenever it shall be shown to his satisfaction that a tract of
> public land has been held in good faith and in peaceful, adverse, possession by a
> claimant, his ancestors or grantors, under claim or color of title for the period
> commencing not later than January 1, 1901, to the date of application during
> which time they have paid taxes levied on the land by State and local
> governmental units, issue a patent for not to exceed one hundred and sixty acres of
> such land upon the payment of not less than $1.25 per acre . . .

43 U.S.C. § 1068 (in pertinent part).

Importantly, however, § 1068 reserves coal and all other minerals contained therein to the United

States, with its lessees enjoying the right to enter the land for purposes of prospecting for and

mining deposits thereon.  *Id*.  Moreover, because, according to plaintiff, he is tracing any rights

to the land and minerals at issue to a grant from the United States to his forefather(s), the United

---

    [12]  In his objection to M.J. Wilkinson's R&R that Harmon filed in *this* case, he argued
that the case of *Abshire v. Vermilion Parish School Board*, demonstrates a "pattern or practice"
because the court determined that land was illegally sold and awarded plaintiff's compensation.
*See* Pl. Objection [doc. # 34].  A Westlaw search suggests that plaintiff is referring to *Abshire v.
Vermilion Parish School Board*, 848 So.2d 552 (La. 2003).  According to the decision, however,
the trial court found that  the Vermilion Parish School Board had "executed a sale of a strip of
land, rather than a canal servitude, to the United Irrigation and Rice Milling Company (United
Irrigation) for canal purposes in 1910." *Id*.  There were no findings of *illegal* conduct.
Moreover, the Supreme Court reversed the judgment in favor of the plaintiffs.  *Abshire, supra*.
In addition, plaintiff fails to show how any alleged wrongdoing by the Vermilion Parish *School
Board* may be equated to the Vermilion Parish *Clerk of Court*.  In short, *Abshire* provides no
support for the missing element(s) of plaintiff's RICO claim.

States is an indispensable party to the suit.  *See Ward v. Humble Oil & Ref. Co.*, 321 F.2d 775, 780 (5th Cir. 1963).  Stated differently, "[b]ecause there would be no legal claim . . . without a corresponding claim of ownership, the real dispute in the present action is whether the oil and gas is owned by the successors in interest to [plaintiff's ancestor] or by the United States."  *Crooks v. Placid Oil Co.*, 166 F. Supp. 2d 1104, 1108 (W.D. La. 2001), *affirmed*, 48 F. App'x 916 (5th Cir. 2002).  Moreover, the exclusive means by which adverse claimants can challenge the United States' title to real property is via the Quiet Title, Act ("QTA"), 28 U.S.C. § 2409(a).  *Id.*

The QTA, however, includes a statute of limitations that bars any action that is not commenced within 12 years from the date that plaintiff (or his predecessor in interest) knew or should have known of the claim of the United States.  *Crooks, supra* (citing *inter alia*, 28 U.S.C. § 2409a(g)).  Further, under the QTA, all that is required for an action to accrue is "a reasonable awareness that the government claims some interest adverse to the plaintiffs."  *Id.*  (citations omitted).

Here, according to plaintiff, he was aware of the "Huntsberry property" as early as 1982 "after hearing that [his] ancestors owned property outside Abbeville, Louisiana.  (Harmon Affidavit [doc. # 15]).  At that time, he toured the property and discovered that oil drilling operations were being conducted on the land.  *Id.*  Thus, by 1982, Harmon knew, or should have known of the adverse interest in the property.  Of course, plaintiff permitted considerably more than 12 years to lapse before he finally filed the instant suit.  As a result, his QTA-dependent claim is untimely, and must be dismissed.  *Crooks, supra* (citations omitted).

iv)     42 U.S.C. §§ 2000e-5 & 6

In his latest submissions to the court, plaintiff invokes 42 U.S.C. §§ 2000e-5 (Section 706

of Title VII) & 2000e-6 (Section 707 of Title VII)[13] as authority to compel the attorney general to

intervene in this matter apparently against the union(s) (defendant(s) in the *Berger* case), plus

Vermilion Parish (*see* Pl. Objection [doc. # 34]) to redress their pattern or practice of

employment discrimination.[14]  It is manifest, however, that Congress bestowed "broad

discretion" upon the EEOC to determine which suits it will prosecute under Sections 706 and

707, and which suits it will leave to private parties to pursue.  *United States v. Allegheny Ludlum

Indus., Inc.*, 517 F.2d 826, 868 (5th Cir. 1975).  Thus, no individual enjoys a "right" to

prosecution of his or her case by the EEOC.  *Id.*

       The court further notes that Title VII, which includes 42 U.S.C. §§ 2000e-5 & 6, seeks to

remedy discriminatory *employment* practices.  According to plaintiff, however, he retired in

1999.  (IFP Application [doc. # 2]).  In addition, there are no allegations that plaintiff has been

denied employment with any defendant since that time.  In short, plaintiff's submissions do not

state a claim for relief under 42 U.S.C. §§ 2000e-5 & 6.

       v)      State Law Claims

       When, as recommended here, all claims which conferred federal subject matter

---

       [13]  Section 706 empowers the Equal Employment Opportunity Commission ("EEOC") to
file a lawsuit to remedy an *individual's* claim of discrimination.  *E.E.O.C. v. Akal Sec., Inc.*, Civ.
Action No. 08-1274, 2010 WL 3791705, at *3 (D. Kan. Aug. 31, 2010).  Whereas, Section 707
provides separate authority for the EEOC, in its own right, to bring an action under a "pattern and
practice" theory to correct unlawful discrimination.  *Id.*

       [14]  In 1972, Congress amended the enforcement procedures of Title VII of the Civil
Rights Act of 1964 to transfer authority under § 707 from the Attorney General to the EEOC to
institute "pattern or practice lawsuits."  *E.E.O.C. v. Harvey L. Walner & Assoc.*, 91 F.3d 963,
968 (7th Cir.1996).

jurisdiction are dismissed,[15] the court may decline to exercise supplemental jurisdiction over the remaining state law claims.  28 U.S.C. § 1367.  In fact, this is the general rule.  *Priester v. Lowndes County*,  354 F.3d 414, 425 (5th Cir. 2004) (citation omitted).  In this case, the twin interests of comity and efficiency dictate that plaintiff's remaining state law claims for fraud, trespass, and anything else, be dismissed without prejudice.  28 U.S.C. § 1367(c).

e)      Pending Motions

        Having recommended that all of plaintiff's claims be dismissed, it further recommended that all of plaintiff's pending motions, including, but not necessarily limited to [doc. #s 4, 5, 11, 12, 13, 14, 30, 32, 35, & 36] be DENIED, in their entirety, as moot.  With regard to plaintiff's motion(s) to transfer/consolidate unspecified state court cases to federal court, the court adds that the removal statute does not authorize plaintiffs to remove cases filed by them in state court.  *See* 28 U.S.C. § 1446(a); *McKenzie v. United States*, 678 F.2d 571, 574 (5th Cir. 1982) (citations omitted).

        The undersigned further recognizes that "before dismissing a pro se complaint, a district court ordinarily should give the litigant an opportunity to amend."  *Bruce v. Little*, 2014 WL 1929588 (5th Cir. May 15, 2014) (citing *inter alia*, *Bazrowx v. Scott,* 136 F.3d 1053, 1054 (5th

---

        [15]  The court does not discern the existence of diversity jurisdiction, 28 U.S.C. § 1332, in this case.  At the time that plaintiff filed suit, he professed to be a resident of Washington D.C.  Since then, he has claimed residencies in Texas and Louisiana.  Even if the court were to credit plaintiff's original allegation of residency and equate it to domicile, diversity jurisdiction still would be lacking because defendant, Louisiana State Archives, is not considered a citizen for purposes of diversity.  *Louisiana v. Union Oil Co. of California*, 458 F.3d 364, 366 (5th Cir. 2006) (no federal diversity jurisdiction where state is a party); *Texas Dep't of Hous. & Cmty. Affairs v. Verex Assur., Inc.*, 68 F.3d 922, 926 (5th Cir. 1995) (state agency not a citizen for purposes of diversity); *Dacey v. Florida Bar, Inc.*, 414 F.2d 195, 198 (5th Cir. 1969) (no diversity jurisdiction where defendant is state agency).

Cir.1998)).  Nevertheless, a district court may deny leave to amend if the proposed amendment is futile – even when the plaintiff is entitled to amend as a matter of course.  *United States v. Gonzalez*, 592 F.3d 675, 681 (5th Cir. 2009) (citations omitted).

Here, plaintiff has filed multiple amendments and/or motions for leave to amend.  The court has considered the motions and the proposed pleadings in connection with its review of plaintiff's claims.  Nevertheless, it is manifest that plaintiff's amendments merely perpetuate the same baseless and conclusory allegations of conspiracy and constitutional iniquity that he included in his original submissions.  Thus, any proposed amendment is futile, and may be denied as such.

f)      Sanctions

The federal courts enjoy the inherent authority to impose sanctions, including an injunction, against litigants who use the legal system to harass their opponents through vexatious litigation.  *Terra Partners v. Rabo Agrifinance, Inc.*, 504 F. App'x 288, 290-91 (5th Cir. 2012) *cert. denied sub nom. Veigel v. Rabo Agrifinance, Inc.*, ___ U.S. ___, 133 S. Ct. 2398 (2013) (citations omitted).  Here, by any measure, Harmon has engaged in a multi-front, ongoing campaign to re-litigate the *Berger* case in multiple tribunals.  If any litigant warrants sanctions, it is Harmon.  By his present suit(s), Harmon seeks to spread his fanciful claims to include additional, unsuspecting parties.  Harmon's existing arguments, however, are not supported by the law or specific allegations of fact.   Thus, it is likely that any future litigation will prove repetitive, vexatious, and meritless.  *Terra Partners, supra*.  Under these circumstances, "a narrowly-tailored injunction is an appropriate sanction to protect this [and other federal] court[s' judgments and to prevent the continued filing of vexatious litigation."  *Id*.  Toward this end, the

22

undersigned will recommend that plaintiff be prohibited from filing any new civil action in this District without prior approval and authorization of the Chief Judge of this District.

Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that all of plaintiff's federal law claims be DISMISSED WITH PREJUDICE, as legally frivolous, and/or for failure to state a claim upon which relief can be granted.  Fed.R.Civ.P. 12(b)(6).

IT IS FURTHER RECOMMENDED that plaintiff's state law claims be DISMISSED WITHOUT PREJUDICE.  28 U.S.C. § 1367(c).

IT IS FURTHER RECOMMENDED that all of plaintiff's pending motions (including, but not necessarily limited to [doc. #s 4, 5, 11, 12, 13, 14, 30, 32, 35, & 36]) be DENIED, as moot and/or futile.

IT FURTHER RECOMMENDED that plaintiff be SANCTIONED and prohibited from filing any new civil action in the United States District Court for the Western District of Louisiana, without prior approval and authorization of the Chief Judge of this District.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED**

**FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 17th day of November 2014.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

24